IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. 24-00112-TFM-1 |
| | * | |
| GLENNIE ANTONIO McGEE, | * | |
|    aka LITTLE G, | * | |
|    aka LITTLE MAN | * | |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO CONTINUE TRIALS IN THE INTEREST OF JUSTICE**

The United States, by and through Sean P. Costello, the United States Attorney for the Southern District of Alabama, responds in opposition to defendant Glennie Antonio McGee's ("McGee") motion to continue the trial in this case, Doc. 509, as ordered by the Court, Doc. 519.

The Court should reject McGee's hyperbolic complaints of inadequate time to prepare for trial. This case has been pending for nearly a year, during which time McGee has had access to multiple experienced attorneys. The United States has spoon-fed key evidence to McGee and his lawyers at several reverse-proffer sessions that occurred months in advance of trial. And because the first trial lasted nearly a week before the Court declared a mistrial, McGee and his lawyers have reaped the benefit of a live dress rehearsal of the United States' case in chief. As such, the parade of horribles that McGee insists will result if the Court does not further delay the trial is make-believe.

McGee compounds his motion's lack of merit by citing several nonexistent cases, attributing false quotations to others, and directing this Court to precedent that the Supreme Court reversed more than 40 years ago. McGee's incorrect and outright fake citations—many of which the United States has been unable to locate despite diligent searches—bear the hallmarks of legal authorities "hallucinated" by artificial intelligence. *See, e.g.*, *Versant Funding LLC* v. *Teras*

*Breakbulk Ocean Navigation Enters., LLC*, 2025 WL 1440351, at *6–7 (S.D. Fla. May 20, 2025) (discussing the proliferation of AI-hallucinated research and remarking that "[t]here is no room in our court system for the submission of fake, hallucinated case citations . . . ."). When the Court examines real authorities under prevailing (not overturned) legal standards, it readily should conclude that no continuance is warranted.

Accordingly, the Court should deny McGee's motion to continue.

A.     **Procedural history**

In a prior brief, the United States summarized the following relevant procedural history of this case:

> On July 24, 2024, the Court arraigned McGee on the initial indictment. At that hearing, the United States provided McGee's prior counsel with a massive initial production of discovery that included agency reports, search-warrant documents, photos and videos, phone-ping data, pen register/trap and trace ("pen/trap") data, phone extractions, and criminal-history information, among other things. *See* Ex. 22, Doc. 403-22, PageID.3022. The United States indicated in its initial discovery letter that, as of July 2024, additional discovery, including Title III wiretap interceptions and discovery from related investigations, was available to be copied to a storage device or to be reviewed in the U.S. Attorney's Office by appointment. *Id.* The United States also requested reciprocal discovery from McGee pursuant to Federal Rule of Criminal Procedure 16(b). *Id.*, PageID.3023.
>
> On August 29, 2024, McGee's prior counsel provided the United States with a hard drive to which the government copied additional materials, including Title III wiretap interceptions, transcripts, phone extractions, and related case discovery. *Id.*, PageID.3024–25. By September 17, 2024, McGee's counsel had picked up hard drives that contained the vast majority of the discoverable evidence in this case. *Id.*, PageID.3026–28. Consistent with its continuing duty to disclose under Federal Rule of Criminal Procedure 16(c), the United States has made several smaller, supplemental productions of materials since the fall of 2024. *Id.*, PageID.3029–48.

> On December 3, 2024, the United States met with McGee and his prior counsel in person at the federal courthouse for a reverse-proffer presentation. During that lengthy meeting, the United States presented McGee and his lawyer with a detailed overview of the United States' evidence, including several relevant Title III recordings, pole-camera videos, details regarding drug seizures, relevant text messages, and a summary of McGee's recorded, post-*Miranda* confession. *See* Ex. 25, Doc. 403-25 (sealed).
>
> On April 18, 2025, following the appointment of McGee's current counsel, the United States again provided a reverse-proffer presentation detailing the above-referenced evidence.[1] *See* Ex. 28, Doc. 403-28, PageID.3132. Moreover, the United States has responded in a timely fashion to every single discovery request made by McGee's current counsel since his appointment, including responses on nights and weekends, often directing counsel to the location of discovery that the United States provided months ago. *See generally id.*, PageID.3127–79.

Doc. 405, PageID.4294–95.

On June 9, 2025, this Court empaneled a jury and commenced a trial of McGee and two codefendants. The trial proceeded for six days, during which the United States presented the testimony of a dozen witnesses and admitted the majority of its anticipated exhibits. On June 17, 2025, after expressing concerns about the length of the trial and the continued availability of jurors, the Court granted a joint motion for a mistrial orally requested by McGee and his codefendants. Doc. 483. The Court rescheduled the trial to begin on July 28, 2025. Doc. 489.

The United States has ordered complete transcripts of the testimony of its witnesses during the first trial. The United States expects the transcripts to exceed 1,000 pages' worth of testimony. Consistent with its obligations under the Jencks Act, 18 U.S.C. § 3500, the United States will

---

[1] In May 2025, representatives of the U.S. Attorney's Office, the Federal Bureau of Investigation, and the Internal Revenue Service, Criminal Investigation also presented McGee's current counsel with a detailed reverse-proffer presentation regarding McGee's tax fraud and identity-theft case. *See United States* v. *Maxie, et al.*, No. 24-cr-113-TFM (S.D. Ala. 2024).

provide the defendants with the transcripts as required by law. *United States* v. *Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003) ("Once the trial begins, the government must produce the *Jencks Act* statements of a witness when the witness is tendered for cross-examination.").

On July 3, 2025, McGee moved to continue the trial from July 28, 2025, "to August 25, 2025[,] or later . . . ." Doc. 509, PageID.6428. The Court ordered the United States to file its response, if any, by 5:00 pm on July 10, 2025. Doc. 519. This is the United States' response.

**B.    Legal standard**

"The decision whether to continue a trial is committed to the sound discretion of the district court." *United States* v. *Wright*, 63 F.3d 1067, 1071 (11th Cir. 1995). The Speedy Trial Act lists a non-exhaustive set of factors that a court must consider in determining whether to grant an ends-of-justice continuance, including whether the defendant and his attorneys have had "reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(iv). District courts have "broad discretion in weighing these factors." *United States* v. *Dunn*, 83 F.4th 1305, 1315 (11th Cir. 2023). The Eleventh Circuit reviews the denial of a continuance for abuse of discretion and requires a defendant to show "specific substantial prejudice." *United States* v. *Smith*, 757 F.2d 1161, 1166 (11th Cir. 1985).

**C.    Discussion**

The Court should deny McGee's motion to continue for several reasons. *First*, McGee's claims of inadequate time to prepare are overblown and hold no water, as he has had ample time to prepare for trial. *Second*, McGee cites fake, nonexistent, and long-overruled case law to support his meritless position. *Third*, actual, binding case law militates in favor of denying McGee's request for a continuance.

1.      **McGee and his lawyers have had more than enough time to prepare for trial.**

Over the past year, McGee and his numerous lawyers have had ample time to prepare this case for trial. Although McGee regurgitates his typical complaints about terabytes of discovery, *see* Doc. 509, PageID.6421–22, he glosses over several crucial factors that have eased the burden of reviewing the discovery. For one thing, on separate occasions in December 2024 and April 2025—many months before trial—the United States made detailed, in-person reverse-proffer presentations to McGee and his lawyers outlining the United States' key evidence and its theory of the case. Those lengthy presentations laid bare for McGee some of the most critical and damning evidence in the discovery.

Moreover, McGee now has had the benefit of a dry run of most of the United States' case in chief. Indeed, when the Court declared a mistrial at McGee's first trial, the United States had admitted the majority of its exhibits and had published nearly all of the wiretap calls that it intended to offer. The United States also provided McGee and his counsel with a complete, organized copy of its trial exhibits when the trial began. So, McGee's protestations about "overwhelming case complexity and lack of resources," *id.*, PageID.6424, ring hollow. *United States* v. *Ortiz*, 603 F.2d 76, 78–79 (9th Cir. 1979) (upholding denial of continuance and noting that defendant "had in his possession well in advance of the trial a detailed summary of the evidence which the government intended to present"). The Court should reject them.

2.      **The cases that McGee cites in support of his motion largely are fake, nonexistent, or no longer valid.**

In addition to inflating the facts, McGee's motion directs the Court to fake, nonexistent case law. For example, McGee suggests that in "*United States v. Glover*, 431 F.3d 744, 749 (11th Cir. 2005)," the Eleventh Circuit "emphasized that effective counsel means 'adequate

5

preparation' and 'thorough investigation,' especially in complex cases." Doc. 509, PageID.6424. But the quotes that McGee attributes to *Glover* appear nowhere in the opinion. And *Glover* had nothing to do with effective counsel or adequate preparation in complex cases. Rather, the issues the court analyzed in *Glover* related to the Fourth Amendment, sufficiency of evidence, and sentencing. 431 F.3d at 749 (discussing sentencing issues under *United States* v. *Booker*, 543 U.S. 220 (2005)).

The problems with McGee's case citations get worse upon further scrutiny. For example, McGee cites "*United States v. Salemo*, 61 F.3d 214, 220 (11th [*sic*] Cir. 1995)" for the proposition that the Eleventh Circuit held "failure to provide counsel with reasonable tools for effective representation may result in **constitutional violation**." Doc. 509, PageID.6424 (emphasis in original). But *Salemo* is a Third Circuit case, not an Eleventh Circuit case. And the *Salemo* opinion said nothing about providing counsel with "reasonable tools for effective representation." Rather, the case was about whether a defendant's *waiver* of counsel was valid. 61 F.3d at 220–21.

Several cases that McGee cites simply do not exist. For example, McGee suggests that "*United States v. Knowles*, 66 F.4th 1086, 1092 (11th Cir. 2023)," "*United States v. Hernandez*, 896 F.3d 1208, 1214 (11th Cir. 2018)," and "*United States v. Scott*, 613 F.2d 147 (5th Cir. 1980)" support the need for continuances to allow counsel more time to prepare. None of these cases are real. The United States tried to find them in legal research databases, including Westlaw and Lexis, and in commercial search engines, to no avail. The "66 F.4th 1086" citation that McGee attributes to *Knowles* resolves to *Kitterman* v. *City of Belleville*, 66 F.4th 1084 (7th Cir. 2023)—a Section 1983 lawsuit. The "896 F.3d 1208" citation that McGee attributes to *Hernandez* resolves to *Navajo Nation* v. *Dalley*, 896 F.3d 1196 (10th Cir. 2018)—a civil case brought under the Indian

6

Gaming Regulatory Act. And the "613 F.2d 147" citation that McGee attributes to *Scott* resolves to *United States* v. *Montano*, 613 F.2d 147 (6th Cir. 1980)—a case in which the words "continue" and "continuance" do not appear a single time.[2]

The real cases that McGee cites fare no better than the fake ones. For example, McGee cites "*United States v. Cronic*, 675 F.2d 1126 (11th [*sic*] Cir. 1982)" for the proposition that "**overwhelming case complexity** and **lack of resources** could justify a **presumption of ineffectiveness**, even without specific trial errors." Doc. 509, PageID.6424 (emphases in original). For starters, *Cronic* is a Tenth Circuit case, not an Eleventh Circuit case. More importantly, McGee's citation is bad law. In 1984, the Supreme Court reversed and vacated the Tenth Circuit's 1982 decision. *United States* v. *Cronic*, 466 U.S. 648, 666 (1984). In doing so, the Supreme Court rejected the conclusion that the defendant's trial counsel could be "presumed" ineffective based on his lack of experience, the complexity of the case, and having only 25 days to prepare for trial. *Id.* at 661 ("[E]very refusal to postpone a criminal trial will not give rise to such a presumption.").

The Supreme Court's *Cronic* opinion dispatches with many of the arguments for "presumed" prejudice that McGee includes in his motion. For instance, McGee contrasts the United States' "virtually unlimited resources," the "3+ year period of time" it spent investigating

---

[2] McGee's citation of fake, potentially AI-hallucinated case law is egregious, if not sanctionable. *See, e.g.*, *Marion* v. *Hollis Cobb Assocs., Inc.*, 2025 WL 1275828, at *5 (N.D. Ga. Feb. 14, 2025) ("Given the rise of artificial intelligence and its use in court proceedings, courts have begun ordering litigants suspected of citing to AI-hallucinated cases to show cause why sanctions or discipline should not issue."); *O'Brien* v. *Flick*, 2025 WL 242924, at *6 (S.D. Fla. Jan. 10, 2025) ("The use of nonexistent case citations and fake legal authority generated by artificial intelligence programs has been the topic of many published legal opinions and scholarly articles as of late. Courts that have addressed the practice consistently agree that the use of fake legal authority is problematic and warrants sanctions."); *Park* v. *Kim*, 91 F.4th 610, 615 (2d Cir. 2024) ("An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." (quoting *Mata* v. *Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)).

McGee, and its "full support staff in court and behind the scenes," with his representation "by a single compensated CJA attorney."[3] Doc. 509, PageID.6423–24. But the Supreme Court concluded that "[n]either the period of time that the Government spent investigating the case, nor the number of documents that its agents reviewed during that investigation, is necessarily relevant to the question whether a competent lawyer could prepare to defend the case in 25 days." 466 U.S. at 663. The Court also emphasized that the United States' efforts to "assembl[e], organiz[e], and summariz[e]" evidence, as the United States has done for McGee and his lawyers in this case, "unquestionably simplified the work of defense counsel in identifying and understanding the basic character of the [charged crimes]." *Id.* at 663–64.

Similarly, although McGee emphasizes that his current counsel has "never tri[ed] a criminal case in federal court," Doc. 509, PageID.6423, the Supreme Court has said this is not dispositive and does not justify a presumption of ineffectiveness. As the Court put it in *Cronic*, "[e]very experienced criminal defense attorney once tried his first criminal case."[4] 466 U.S. at 665. Thus, McGee's speculation that "a conviction obtained under these circumstances could later be set aside due to ineffective assistance of counsel," Doc. 509, PageID.6427, rests on an incorrect interpretation of the law that the Supreme Court jettisoned decades ago.

---

[3] McGee also offers his conspiratorial belief (but no evidence) that other members of the U.S. Attorney's Office "were observing the proceedings [at the first trial] through the CCTV cameras in the courtroom." Doc. 509, PageID.6424. This is false. The United States has no access to the Court's camera system.

[4] Like McGee's current counsel, the defense attorney in *Cronic* "told the jury during opening argument that [his client's] defense was his 'first trial'"—a fact the Tenth Circuit emphasized in the decision that the Supreme Court later invalidated. *Cronic*, 675 F.2d at 1129 n.2.

### 3. True case citations under prevailing legal standards undermine McGee's request for a continuance.

Recent, binding case law underscores the flaws in McGee's legal position. For example, in *Mercado* v. *Sec'y, Fla. Dep't of Corr.*, the Eleventh Circuit noted that the "presumption" of ineffectiveness discussed in *Cronic* is a "narrow exception" to the rule that ineffective-assistance claims require proof of actual prejudice. 119 F.4th 1261, 1267 (11th Cir. 2024). A "presumption" of ineffectiveness only applies (1) "when there has been a 'complete' absence of counsel during a critical stage of the litigation"; (2) "when counsel 'entirely fails to subject the prosecution's case to meaningful adversarial testing'"; (3) "when counsel 'deprives [the] defendant of an appeal that he otherwise would have taken'"; or (4) "when counsel has 'an actual conflict of interest.'" *Id.* (alteration in original). None of these circumstances exists in McGee's case.

Similarly, although McGee's current counsel argues that he has an "ethical obligation" to inform the Court of his inability adequately to prepare for trial and to request a continuance, Doc. 509, PageID.6426, the case he cites for the proposition is inapposite. *See Code* v. *Montgomery*, 799 F.2d 1481 (11th Cir. 1986). In *Code*, the Eleventh Circuit found prejudice based on the failure of an attorney—appointed three days before trial—to conduct an adequate investigation of an alibi defense, to subpoena witnesses, or to request a continuance. *Id.* at 1485. McGee's case bears no resemblance whatsoever to *Code*. And the Eleventh Circuit repeatedly has distinguished *Code* and similar cases as applicable only where "defense counsel utterly failed to investigate potential witnesses or secure their testimony," especially in cases involving alibi defenses. *Khan* v. *United States*, 928 F.3d 1264, 1278–79 (11th Cir. 2019) (collecting cases). In contrast, as McGee's own motion makes clear, his current counsel not only has sought the issuance of subpoenas, but also is prepared to seek mandamus in the Eleventh Circuit if this Court does not

9

grant his request for them.[5]

McGee offers one last-ditch reason for a continuance: the recent arrest of codefendant Jonathan Maurice Hackworth ("Hackworth"). Doc. 509, PageID.6426. McGee suggests that a continuance would "foster judicial economy in that Hackworth can be tried together with the existing co-defendants whose cases are set for trial on July 28, 2025." *Id.* But Hackworth filed a notice of his intent to plead guilty on July 10, 2025, Doc. 531, and likely will change his plea before this case proceeds to trial on July 28, 2025. Accordingly, trying Hackworth together with McGee and his remaining codefendants is a moot issue.

**D.     Conclusion**

For the above reasons, the Court should deny McGee's motion to continue.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

By:

*/s/ Justin D. Roller*
Justin D. Roller
George F. May
Assistant United States Attorneys
United States Attorney's Office
63 South Royal Street, Suite 600
Mobile, Alabama  36602
(251) 441-5845
justin.roller@usdoj.gov
george.may@usdoj.gov

---

[5] Seeking mandamus as to a trial court's discretionary denial of subpoenas would be a fool's errand, as a writ of mandamus is a "drastic" remedy "that only exceptional circumstances, amounting to a judicial usurpation of power, will justify." *United States* v. *Shalhoub*, 855 F.3d 1255, 1259 (11th Cir. 2017).