IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| vs. | ) | CRIMINAL NO. 24-112-TFM-N |
| | | 24-113-TFM-N |
| GLENNIE ANTONIO MCGEE, | ) | |
| Defendant. | ) | |

### DECLARATION OF JAMES A. JOHNSON

I, James A. Johnson, come pursuant to 28 U.S.C. § 1746, and declare as follows:

1. This declaration is submitted as a detailed substantive submission in response to the Court's Order to Show Cause entered on July 10, 2025 (Doc. 537), regarding the citation of legal authorities in the Defense Motion to Continue Trials in the Interest of Justice (Doc. 509, 24-112 and Doc. 251, 24-113) filed on July 3, 2025. First, and I believe most important, I apologize to the Court, opposing counsel, and above all to my client for a mistake – however inadvertent – made under time pressure and in difficult personal circumstance. I fully appreciate that adjudicating matters (for the Court) and litigating matters (for opposing counsel) is a challenging task and there is no reason it should be made more difficult by the specter that citations are fictitious. I understand fully the Court's justifiable Order and opposing counsel's filings. The Court, opposing counsel, and my client are entitled to a full explanation – not only an apology.

2. I am an attorney admitted to practice in the State of Alabama, this Court, and the United States Supreme Court. I am a sole practitioner, I do not operate out of a brick-and-mortar office, and I do not have an office staff.

3. For decades, I did little in the arena of criminal law practice. However, in 2018 I applied to the Criminal Justice Act (CJA) Panel because I wanted to help provide an important



1

public service to those accused of crimes who cannot afford to hire a lawyer. I served as a Trainee on the CJA panel for six (6) years where the panel periodically paired me with experienced federal criminal defense lawyers in cases. I was never involved in a case that went to trial as a Trainee; nonetheless, I was promoted to the full panel in 2024. On February 25, 2025, the Court appointed me to assist Barre Dumas as second chair co-counsel, in representing Glennie Antonio McGee in these two (2) separate criminal cases specially designated as complex (Doc. 327).

4. On March 25, 2025, the Court removed Barre Dumas from these two cases due to a conflict. That step left me as the only defense attorney assigned to these two (2) matters. Because I had never tried a criminal case in federal court, let alone one in which the defendant faced potentially life-altering consequences, I was very concerned. (Doc. 353). During a telephonic conference with Magistrate Judge Nelson on April 14, 2025, I asked the court to appoint co-counsel because of the complexity of the cases. On April 25, 2025, the court appointed CJA panel trainee Melvin Dixon as co-counsel (Doc. 361). Mr. Dixon's appointment was uncompensated and during our initial conversation he explained that he is also a sole practitioner with limited experience and availability.

5. On May 3, 2025, I filed an unopposed motion to continue case 24-112 because I was un-prepared for trial due to the amount of discovery produced by the government and the complexity of the case (Doc. 365). The motion was denied.

6. On May 26, 2025, I filed a Motion for Extension of Time to File Pre-Trial Motions in 24-113 because I would have minimal capacity to work on the 24-113 case after the trial in 24-112 which is expected to take three (3) weeks. In that motion I specifically noted that I had an immediate family member receiving medical treatment at University Hospital in Cleveland

2

during the first two weeks in July (Doc. 221).

7. Case 24-112 proceeded to trial on June 9, 2025. It resulted in mistrial on June 17, 2025, and was re-set for trial on July 28, 2025. During an *ex parte* hearing on June 18, 2025, the day after the mistrial, I expressed my concerns to the Court about my physical ability to try (and re-try) two (2) complex criminal cases back-to-back. No matter what else happened, the trial setting in 24-113 on August 25, 2025 left very little time to prepare after the trial in 24-112 ended. In that *ex parte* hearing I stated for the record:

> And, you know, and to be further honest, I don't know how I'm going try two cases like this, back-to-back, with only a week in between. I don't know if I can do it, physically.
> …
> So I wanted to raise that issue, you know, about the possibility of appointing co-counsel, or, Lord forbid, continuing 113. I really, honestly -- I get four hours of sleep as it is in the middle of trial in a case like this, and I don't think I can do it for six weeks, straight.

(Transcript of July 18, 2025, hearing, P. 41-42)

The Court's response was "well, you will just have to file a motion, as you see fit." My plan at that point was to continue efforts to have experienced co-counsel who could devote the time necessary to these cases appointed and, as the Court instructed, file a motion to continue if necessary.

8. Eight (8) days later, on June 26, 2025, Magistrate Judge Nelson held a hearing to determine whether prior co-counsel, Barre Dumas, could be put back on the 24-113 case. Mr. Dumas had been conflicted out of 24-112 because he represents a cooperating witness. At the hearing Magistrate Judge Nelson determined that putting Mr. Dumas back on the case was not an option. As of July 3, 2025, the Court had not issued any orders appointing co-counsel in the case.

9. I was in Cleveland, Ohio at University Hospital on July 3, 2025, attending to the care

3

of my family member. That afternoon an ECF notice was issued indicating the pre-trial conference in case 24-113 had been bumped-up one (1) week from July 18, 2025, to July 11, 2025. Consequently I needed to immediately file the motion to continue before the Fourth of July weekend, otherwise I knew it might not be viewed and docketed until the week of the new hearing date.

10. I grabbed my laptop and used my prior motion as a template and drafted the new motion to continue, which is the subject of this declaration. I did so as quickly as possible because I was already pushing up against the July 4th holiday and I needed to turn my attention back to my family member who was recovering from the surgical procedure.

11. For legal research, I typically use Fastcase which is the free legal research tool provided by the Alabama State Bar. On July 3, 2025, I was working from a laptop and did not use my usual programs and workflow that I use while at my home office. Instead, I hastily finalized a draft of the motion and used a Microsoft Word plug-in called Ghostwriter Legal that I had only previously used as a grammar checker and search tool (like Google), to find additional cases to support the motion. While legal authorities may not have been essential to the motion, I naturally wanted to see if there were additional cases to strengthen the argument. I do not remember the actual search terms I used and cannot find any history on my computer. Although I do remember that the search returned a list of cases with blurbs and quotes that were relevant and appeared to be legitimate. It looked similar to a list of cases you would see in any other legal research program or search engine except the interface was smaller because it was built into Word. I inserted several of the relevant cases and filed the motion.

12. Attempts to recreate the exact search I used results in equally "hallucinated" cases with different names and citations.

13. The properties of the "New Motion to Continue.doc" in Word show a "Total editing time: 16 Minutes." I am not sure if 16 minutes includes time spent editing before I saved the old motion with a new name or not, so the actual time may have been longer. Under normal circumstances I would have spent much more time and attention on the motion.

14. Although it may seem like a very trivial detail, to fully explain one reason I used Ghostwriter and not Fastcase on this occasion is because Ghostwriter appears automatically in the sidebar of Word. Fastcase which requires me to open my internet browser, log into the Alabama State Bar website, and then log into Fastcase. It is tedious to toggle back and forth between programs on my laptop with the touchpad. At my home office I have a large monitor and keep windows open for each program. I am able to toggle back and forth seamlessly while researching, writing, and searching. In my haste to get the motion filed, I unfortunately fell victim to the allure of a new program that was open and available.

15. I think it is important to explain what I did know, and what I did not know on the afternoon of July 3, 2025. I had heard news accounts of attorneys who had used Chat GPT to draft filings. I also knew that Chat GPT could "hallucinate" or "make up" case citations. Like every practicing attorney, I also know that there are both paid and free programs for legal research which generate reliable (and real) results for authorities. Based upon the information I had about Ghostwriter on July 3, 2025, I believed that it was a reliable legal research program.

16. Since the Court's Order was entered, I have looked carefully at the information available about this program. The promotional materials for Ghostwriter Legal claim:

> Ghostwriter Legal is a game-changer for legal professionals, streamlining their workflow by providing unparalleled AI-powered assistance in drafting documents, researching case law, and summarizing complex information. This cutting-edge add-in not only saves valuable time and resources but also elevates the quality of legal work, ensuring that attorneys and law firms stay ahead in the competitive legal landscape.

5

https://ghostwriter-ai.com/professions.html

A recent review from a popular legal technology blog says:

> What truly sets Ghostwriter Legal apart is its adaptability. Providing basic details enables the AI to tailor documents based on jurisdiction, case law, and style preferences. This expedites drafting and ensures precision. Externally, Ghostwriter Legal exemplifies your firm's ability to deliver quality legal documents efficiently. Internally, it's akin to having a versatile, skilled ghostwriter, elevating your firm's capabilities.

https://comradeweb.com/blog/ai-tools-for-lawyers/

Another reviewer writes:

> Ghostwriter.Law is a legal content generator designed specifically for lawyers and law firms. Unlike generic AI writing tools, this platform focuses on generating court-ready pleadings, motions, and even blog posts with built-in legal tone and structure.
>
> Users can prompt the tool with a legal issue or document type, and Ghostwriter will generate a draft based on precedent, local rules, and plain-language best practices. It also offers built-in citation support and formatting that complies with legal standards.
>
> This tool is ideal for solo attorneys or firms looking to reduce the time spent on first drafts. Plans start at $49 per month, and premium features include integration with court rule sets and custom templates.

https://rankings.io/blog/legal-ai-tools

17. I had used Ghostwriter only occasionally before July 3, 2025, primarily as a drafting assistant rather than for legal research. My impression and assumption – which I now know is absolutely inaccurate – was that it was similar to Fastcase or what I would think of as a "classic" Westlaw or Lexis / Nexis legal research program. It is not. I take full responsibility for inadequately understanding the nature of software I was using. If I had known it was like Chat GPT and capable of hallucinating imaginary results, I never would have used it to find relevant cases.

18. Now, as the Court would expect, I have scrutinized the information available and

researched the current state of AI technology in legal platforms. My understanding now is that even some widely used paid platforms (like Lexis+ AI, and Westlaw Co-Counsel) can create citations that do not exist. Before this experience I had little concept that legal research programs like Lexis, Westlaw, and Fastcase (which all offer "AI-powered" products) could be unreliable, like ChatGPT. When I used Ghostwriter the idea that the search results, which looked authentic, could be completely made up never even entered my mind. Whether that was due to my naivete related to AI or overblown puffery by the company, I will never make that mistake again.

19. My failure to verify the accuracy of every case and citation in the motion was an honest mistake. I take full responsibility. I never intended to mislead the Court or opposing counsel and I never intended to cast an unfavorable light on my client. This is not an excuse, merely background and an explanation of what happened. I should have checked any citation I was not already familiar with – by comparing it to the actual text of cited opinions or, at the very least, the summary information some publishers provide that accompanies the actual text of the opinion such as "headnotes."

20. I take the concerns of the Court seriously. In all the years that I have practiced law, I have never been subject to disciplinary action by the Bar or any court. I take my standing, integrity, and reputation in the legal community seriously and from this point forward I will take every step necessary to review all of my filings for proper case citations and accuracy.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 14, 2025

*[signature]*
James A. Johnson